UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY LOCKHART )<br>)<br>*Plaintiff,* )<br>)<br>v. )<br>)<br>ADVOCATE HEALTH AND )<br>HOSPITALS CORPORATION, d/b/a )<br>ADVOCATE AUROA HEALTH, )<br>)<br>*Defendant*. ) | Case No. 22-cv-05875<br><br>**Jury Trial Requested** |

## FIRST AMENDED COMPLAINT

**NOW COMES** the Plaintiff, ANTHONTY LOCKHART (hereinafter "Plaintiff"), and brings forth the following cause of action and allegations against Defendant, ADVOCATE HEALTH AND HOSPITALS CORPORATION, d/b/a ADVOCATE AURORA HEALTH., (hereinafter "Defendant" or "Defendant company"), and states the following:

## INTRODUCTION

1.  Plaintiff seeks redress for the violation of rights guaranteed to Plaintiff by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., as amended, as a result of the gender/sex discrimination against him by Defendant, as well as redress for the defamation *per se*, arising from Defendant's defamatory communications about two (2) alleged incidents, which Defendant utilized in an attempt to support Plaintiff's wrongful termination; pursuant to Rule 15(c) of the Federal Rule of Civil Procedure, any amendments as set forth herein Plaintiff's First Amended Complaint shall relate back to the date of the original Complaint, filed on October 25, 2022.

1

## JURISDICTION AND VENUE

2. Plaintiff alleges violations of his civil rights under Title VII of the Civil Rights Act of 1964; therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1331, and 42 U.S.C. §2000e-5(f), in that this case arises under federal law.

3. Venue is property in the Northern District of Illinois, Eastern Division, because a substantial part of the events or omissions, including the unlawful employment practices by Defendant, occurred within said District pursuant to 28 U.S.C. § 1391(b) and (c).

4. This Court would have supplemental jurisdiction over any of Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367(a).

5. On or about March 17, 2022, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC"). See Plaintiff's charge of discrimination attached hereto as **Exhibit "A"**.

6. The EEOC issued a Notice of Right to Sue to plaintiff on or about August 30, 2022. See Notice of Right to Sue letter attached hereto as **Exhibit "B"**.

## PARTIES

7. Plaintiff is a 54-year-old citizen of the United States, residing in the City of Chicago, State of Illinois, County of Cook. Prior to his unlawful termination, Plaintiff worked for Defendant company at multiple hospital and medical clinic facility locations as an Echo/Vascular ultrasound technician.

8. Defendant is a hospital formed under and governed by the Illinois Hospital Licensing Act (210 ILCS 85/1 *et seq.*).

9. Defendant is an "employer" as defined by the laws under which this action arises, as well as for the purposes of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b), as

Defendant employed fifteen (15) or more employees for each working day for twenty (20) or more calendar weeks in the current and preceding calendar years.

10. At all relevant times herein, Plaintiff worked for Defendant at multiple hospital and medical clinic facility locations as an Echo/Vascular ultrasound technician within the State of Illinois.

## PROCEDURAL REQUIREMENTS

11. Plaintiff has complied with all statutory perquisites to filing this action.

12. On or about March 17, 2022, Plaintiff filed a claim against Defendant with the U.S. Equal Employment Opportunity Commission ("EEOC"), whereby satisfying the requirements of 42 U.S.C. §2000e-5(b) and (e).

13. On or about March 17, 2022, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC"), whereby satisfying the requirements of 42 U.S.C. §2000e-5(b) and (e).

14. The EEOC issued a Notice of Right to Sue to plaintiff on or about August 30, 2022, whereby this present Complaint is filed timely pursuant thereto.

## BACKGROUND LEADING TO PLAINTIFF'S TERMINATION

15. Plaintiff was hired by Defendant on or about November 16, 2015, as an Echo/Vascular Ultrasound Technologist.

16. Plaintiff worked Defendant as an Echo/Vascular Ultrasound Technologist for an uninterrupted period from the date of his hire continuing on through the unlawful termination of his employment by Defendant on or about January 14, 2022.

17. From December 23, 2021, until January 3, 2022, Plaintiff was given time off from his regular employment duties by Defendant company for a ten (10) day period of quarantine, due to Plaintiff having tested positive for Covid-19 at the time.

18. Upon Plaintiff's return to work on January 3, 2022, Plaintiff was informed that he was required to attend a meeting via Zoom video conference with the human resources department.

19. On January 3, 2022, Plaintiff attended the Zoom video conference meeting, as so requested, during which he was asked a series of questions about whether he remembered anything out of ordinary about a female patient from on or about November 29, 2021.

20. During the meeting on January 3, 2022, human resources did not provide Plaintiff with any specific details about any alleged complaint(s) against him.

21. Plaintiff fully cooperated with the Human Resources interview on January 3, 2022, and answered all the questions asked of him to the best of his memory and ability that day.

22. Following the meeting on January 3, 2022, Plaintiff was allowed to return to work, and completed rest of the workday.

23. Following the meeting on January 3, 2022, Plaintiff worked uninterrupted until January 6, 2022.

24. On or about January 6, 2022, Plaintiff was informed that Defendant was going to investigate the allegations further, and he should not return to work until he received confirmation that said investigation was completed and cleared.

25. On or about January 14, 2022, Defendant terminated Plaintiff's employment by way of a telephone call and email to him.

26. Prior to the termination of Plaintiff's employment, Defendant never provided Plaintiff with any documentation or any written complaint detailing the specific allegations against him.

27. Prior to the termination of Plaintiff's employment, Defendant never asked Plaintiff to provide any formal verbal or written statement regarding the allegations.

28. Prior to the termination of Plaintiff's employment, Defendant never made Plaintiff aware of the nature of the investigation, nor that Plaintiff's employment with Defendant company was at risk.

29. On or about January 14, 2022, Defendant issued to Plaintiff a document entitled "Corrective Action Notice", which was signed and dated by a Stephanie Escobedo, who is/was at all times relevant herein Defendant's duly authorized agent and/or employee, acting on behalf of Defendant, and with Defendant's authority and direction, upon information and belief. See a true and correct copy of the Corrective Action Notice attached hereto as **Exhibit "C"**.

30. At the time of Plaintiff's termination, his direct manager/supervisor was Karen Debolt, who is/was at all times relevant herein Defendant's duly authorized agent and/or employee, acting on behalf of Defendant, and with Defendant's authority and direction, upon information and belief.

31. The subject Corrective Action Notice did not actually detail any type of *corrective* action performance plan, but instead simply operated as a notice of termination of Plaintiff's employment. See **Exhibit "C"**.

32. The subject Corrective Action Notice indicated that Plaintiff's employment was terminated for an alleged violation of the Advocate Aurora Health Patient Rights & Responsibilities Policy (hereinafter "PRR Policy"). See **Exhibit "C"**.

33. At all times relevant herein, Plaintiff never signed any written acknowledgement or other documentation admitting that he violated the subject PRR Policy.

34. At all times relevant herein, Plaintiff was never provided with any type of formal review, hearing, or appellate process by Defendant company through which he could contest and confront the allegations levied against him.

35. At all times relevant herein, Plaintiff was never shown any type of written complaint against him by the unnamed patient.

36. Defendant's Corrective Action Notice contains multiple defamatory statements/communications/publications including vague descriptions of two alleged incidents, from "November 2020" and "November 29, 2021", respectively, through which Defendant portrays the events and Plaintiff in a false and/or misleading light as grounds to support Plaintiff's termination. See **Exhibit "C"**.

### ALLEGED INCIDENT FROM NOVEMBER 2020

37. The subject Corrective Action Notice references the investigation of an alleged incident from Trinity Hospital in November 2020. See **Exhibit "C"**.

38. The alleged incident from Trinity Hospital in November 2020 concerned an unnamed female patient who had specifically requested the services of female ultrasound technician, or at the very least the presence of a female hospital employee present, upon information and belief.

39. Contrary to said female patient's specific request(s), Trinity Hospital directed Plaintiff, a male gendered technician, to perform the ultrasound examination on said female patient, and did not and/or would not provide an additional female employee to be present at the time.

6

40. As Plaintiff began performing the ultrasound scan on leg of the unnamed female patient in November 2020, said patient told Plaintiff that she requested a female and jumped off the examination table before the scan of her first leg was even completed, whereby she stopped the study and demanded to speak with a manager.

41. Immediately thereafter the patient left the examination room, Plaintiff called for the charge nurse to address the situation, and called hospital security as well due to the patient's behavior.

42. Following an investigation about the alleged incident from Trinity Hospital in November 2020, Plaintiff was not found to be at fault for any wrongdoing, and the alleged incident was cleared, upon information and belief.

43. Plaintiff was not issued any employee discipline for the alleged incident from Trinity Hospital in November 2020.

44. During the subject investigation, Plaintiff was kept working at two other facilities, and subsequently compensated for any and all time he missed from Trinity Hospital as a result of the investigation, upon information and belief.

45. Despite Plaintiff receiving no employee discipline, nor being found at fault for any wrongdoing, Defendant still published the defamatory communications about the *cleared* incident from Trinity Hospital in November 2020 in the subject Corrective Action Notice in order to support Plaintiff's termination. See **Exhibit "C"**.

46. Defendant's communications regarding the *cleared* incident from November 2020 in the Corrective Action Notice dated January 14, 2022, only stands to reinforce the discriminatory intent of Defendant company to cause harm to Plaintiff's reputation regarding his

7

business/profession in the eyes of the community and in order to support their wrongful termination of his employment. See **Exhibit "C"**.

## ALLEGED INCIDENT FROM NOVEMBER 29, 2021

47. The second alleged incident in the Corrective Action Notice concerns November 29, 2021. See **Exhibit "C"**.

48. Similar to the *cleared* incident from November 2020, the subject patient from November 29, 2021, had previously requested a female gendered ultrasound technician, upon information and belief.

49. In further similarity to the *cleared* incident from November 2020, Defendant company failed to provide said patient with a female technician, and instead directed Plaintiff, a male gendered technician, to perform the scan/study, and again without ordering a female hospital employee to be present that day.

50. Moreover, the subject Corrective Action Notice states the following, in pertinent part, against Plaintiff:

> "As the alleged conduct ***would*** violate the AAH Patient Rights & Responsibilities Policy, your employment with Advocate Aurora Health is being terminated, effective your last day worked." Emphasis Added. See **Exhibit "C"**.

51. Of note, the subject Correct Action Notice does not indicate that Plaintiff was found to have *actually* violated the PRR Policy, but merely contends that the "*alleged*" conduct "*would violate*" the PRR Policy, and terminated Plaintiff's employment because of it. See **Exhibit "C"**.

52. Following his termination, Plaintiff contacted the human resources department of Defendant company in an attempt to appeal the discharge, but was subsequently informed that he could not appeal the decision given the nature of the allegations.

8

53. Upon information and belief, Plaintiff's employment was terminated for both discriminatory purposes, as well as pretextual reasons, in an attempt of Defendant company to insulate itself from involvement with any legal claims which might be perceived to be criminal and/or sexual in nature.

54. Defendant company discriminated against Plaintiff based upon his gender by twice placing him in situations where female patients specifically requested the presence of female gendered hospital staff.

55. Upon information and belief, the accusations from both November 2020 and November 29, 2021, would not have occurred to similarly situated female gendered employees.

56. Defendant company discriminated against Plaintiff by publishing gender-based defamatory statements, which were false and/or misleading in nature.

57. Defendant company discriminated against Plaintiff by publishing gender-based defamatory statements, which essentially imputed civil and/or criminal liability to Plaintiff.

58. Defendant company discriminated against Plaintiff by publishing gender-based defamatory statements, which were intended to, and did, harm Plaintiff in his business/professional reputation.

59. Specifically, the Corrective Action Notice repeated and stressed that both alleged incidents involved inappropriate touching toward "female" patient, which given Defendant's possible culpability for not providing the requested female staff, appears targeted at creating false and/or misleading depiction of Plaintiff simply because he is male. See **Exhibit "C"**.

60. By repeatedly stressing that Plaintiff inappropriate touched a "female" patient, but providing no reasoning for such emphasis on gender, nor distinction or other clarification of why

9

gender would be of no consequence in light of the conduct alleged, Defendant places sex/gender directly at the forefront of the inquiry through its own Corrective Action Notice. See **Exhibit "C"**.

**COUNT I:**
**TITLE VII – SEX/GENDER DISCRIMINATION**

61. Plaintiff hereby incorporates and re-alleges the allegations of Paragraphs 1 through 60 above, as if set forth hereinafter.

62. At all times relevant to this action, Defendant was an "employer" as defined and codified in 42 U.S.C. §2000e(b).

63. At all times relevant to this action, Plaintiff was an "employee" as defined and codified in 42 U.S.C. §2000e(f).

64. Defendant discriminated against Plaintiff because of his sex/gender when discharging his employment.

65. Defendant discriminated against Plaintiff because of his sex/gender by twice placing him in situations for which there would be no like complaint for a similarly situated female employee.

66. Defendant discriminated against Plaintiff because of his sex/gender through its communication and publication of defamatory gender-based statements about Plaintiff.

67. Defendant discriminated against Plaintiff because of his sex/gender by terminating his employment without a full and fair investigation of the alleged incident from November 29, 2021.

68. The aforementioned acts and omissions of Defendant company were willful, reckless, and malicious acts of unlawful discrimination against Plaintiff, simply because he was male and the alleged complaint(s) came from a female patient, in violation of the provisions of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000 *et seq*.).

69. As a direct and proximate result of Defendant's actions and omissions, Plaintiff's employment with Defendant company was terminated on January 14, 2022.

70. As a direct and proximate result of Defendant's actions and omissions, Plaintiff has suffered emotional distress, inconvenience, lost wages and benefits, and other consequential damages; additionally, the Court, in its discretion, may award Plaintiff attorney's fees and costs where necessary.

**WHEREFORE**, Plaintiff, ANTHONTY LOCKHART, requests this Honorable Court enter judgment in his favor against Defendant, and enter an Order awarding the following relief:

A. All wages and benefits he would have received but for the discrimination and wrongful termination;

B. Compensatory damages;

C. Punitive damages;

D. An order mandating the Defendant reinstate Plaintiff to his prior position, or front pay in lieu of reinstatement;

E. An award of costs, as provided by F.R.C.P. 54(d)(1);

F. An award of reasonable attorney's fees, as provided by 42 U.S.C. § 2000e-5(k), or 42 U.S.C. § 1988(b); and

G. Such other relief as the Court deems equitable and just.

**COUNT II:**
**DEFAMANTION *PER SE* – THE ALLEGED INCIDENT FROM NOVEMBER 2020**

71. Plaintiff hereby incorporates and re-alleges the allegations of Paragraphs 1 through 70 above, as if set forth hereinafter.

72. Defendant company through its own agents and/or employees conspired with and aided and abetted each other in the common scheme of making and publishing the gender-based

11

defamatory statements in the Corrective Action Notice regarding the alleged incident from November 2020, which was cited directly by Defendant as grounds for Plaintiff's termination.

73. Defendant company through its own agents and/or employees knowingly and voluntarily participated in the common scheme of publication of the defamatory gender-based statements regarding alleged incident from November 2020, in order to harm Plaintiff's reputation, and in attempt to support their unlawful termination of his employment.

74. Defendant company through its own agents and/or employees published the *cleared* alleged incident from November 2020 for the purposes of accomplishing, by concerted action and common design, a harm to Plaintiff's professional/business reputation.

75. The manner in which Defendant communicated and published the *cleared* incident from November 2020 was false and misleading, and constitutes defamation *per se* in that such publications concerned Plaintiff's reputation in his profession/business, whereby lowering such reputation in the eyes of the community and, upon information and belief, deterred the community including potential new employers from associating with Plaintiff; therefore, damages are presumed.

76. The manner of communication and publication of the *cleared* alleged incident from November 2020 imputes a lack of integrity toward Plaintiff, and is suggestive of the commission of one or more crimes, whereby such is incredibly prejudicial to Plaintiff and his ability to find new or future employment in the same field or trade.

77. Accordingly, Defendant company through its own agents and/or employees acted with malice, and made the communications about November 2020 for purposes of harming Plaintiff's reputation.

78. As a direct and proximate result of Defendant's defamatory statements, Plaintiff has suffered presumed damages in the form of, *inter alia*, impairment of his professional/business reputation and standing in the community.

79. Additionally, due to the malicious nature for of the communications about November 2020, and the egregious conduct of Defendant company in the publication of such, Plaintiff also demands punitive damages.

**WHEREFORE**, Plaintiff, ANTHONTY LOCKHART, requests this Honorable Court enter judgment in his favor against Defendant, and enter an Order awarding Plaintiff the following relief:

A. Compensatory damages;

B. Punitive damages;

C. Presumed damages for impairment of his professional reputation;

D. Costs of the suit; and

E. Such other relief as the Court deems equitable and just.

**COUNT III:**
**DEFAMANTION *PER SE* – THE ALLEGED INCIDENT FROM NOVEMBER 29, 2021**

80. Plaintiff hereby incorporates and re-alleges the allegations of Paragraphs 1 through 79 above, as if set forth hereinafter.

81. Defendant through its own agents and/or employees conspired with and aided and abetted each other in the common scheme of making and publishing the gender-based defamatory statements in the Corrective Action Notice regarding alleged incident from November 29, 2021, which was cited directly by Defendant company as grounds for Plaintiff's termination.

82. Defendant company through its own agents and/or employees knowingly and voluntarily participated in the common scheme of publication of the defamatory gender-based

statements regarding alleged incident from November 29, 2021, in order to harm Plaintiff's reputation, and in attempt to support their unlawful termination of his employment.

83. Defendant company through its own agents and/or employees displayed bad faith both in the investigation regarding November 29, 2021, and in providing Plaintiff any opportunity to knowingly confront the allegations against him, which was done by Defendant company for the purposes of accomplishing, by concerted action and common design, a harm to Plaintiff's professional/business reputation.

84. The manner by which Defendant communicated and published the investigation about November 29, 2021, was false and misleading, and constitutes defamation *per se* in that such publications concerned Plaintiff's reputation in his profession/business, whereby lowering such reputation in the eyes of the community and, upon information and belief, deterred the community including potential new employers from associating with Plaintiff; therefore, damages are presumed.

85. Defendant never issued a finding clearly stating that Plaintiff *actually* violated its PRR Policy, but instead issued a vaguely suggestive statement that "as the alleged conduct *would* violate" the policies of Defendant company Plaintiff's employment was terminated; yet, Defendant still utilized and published such for purposes of supporting the termination as if the occurrence was proven.

86. The manner of communication and publication about November 29, 2021, imputes a lack of integrity toward Plaintiff, and is suggestive of the commission of one or more crime, whereby such is incredibly prejudicial to Plaintiff and his ability to find new or future employment in the same field or trade.

87. Accordingly, Defendant company through its own agents and employees acted with malice, and made the communications about November 29, 2021, for purposes of harming Plaintiff's reputation.

88. As a direct and proximate result of Defendant's defamatory statements, Plaintiff has suffered presumed damages in the form of, *inter alia*, impairment of his professional/business reputation and standing in the community.

89. Additionally, due to the malicious nature for of the communications about November 29, 2021, and the egregious conduct of Defendant company in the publication of such, Plaintiff also demands punitive damages.

**WHEREFORE**, Plaintiff, ANTHONTY LOCKHART, requests this Honorable Court enter judgment in his favor against Defendant, and enter an Order awarding Plaintiff the following relief:

A. Compensatory damages;

B. Punitive damages;

C. Presumed damages for impairment of his professional reputation;

D. Costs of the suit; and

E. Such other relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all triable issues herein.

Respectfully submitted,
Law Office of Fedor Kozlov, P.C.

By: _____
Shawn A. Monroe
One of Plaintiff's Attorneys

15

**Prepared by:**
**The Law Offices of Fedor Kozlov, P.C.**
1990 E Algonquin Rd, Ste. 100
Schaumburg, Illinois 60173
Telephone: 847-241-1299
Facsimile: 847-241-1166
Shawn A. Monroe: shawn@nslslaw.com
Fedor Kozlov, Esq.: fedor@nslslaw.com
Illinois Attorney Registration No.: 6301810 [Law Firm]

### VERIFICATION

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

_Anthony Lockhart (Mar 31, 2023 13:09 CDT)_
ANTHONTY LOCKHART