**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANTHONY LOCKHART, ) | |
| ) | |
|    Plaintiff, ) | CASE NO. 22-cv-05875 |
| ) | |
|    v. ) | Judge Elaine E. Bucklo |
| ) | |
| ADVOCATE HEALTH AND HOSPITALS ) | Magistrate Judge Young B. Kim |
| CORPORATION d/b/a ADVOCATE ) | |
| AURORA HEALTH, ) | |
| ) | |
|    Defendant. ) | |

**ADVOCATE'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

NOW COMES Defendant, ADVOCATE HEALTH AND HOSPITALS CORP. d/b/a ADVOCATE AURORA HEALTH ("Defendant" or "Advocate"), by and through its undersigned attorneys, and in support of its Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), states as follows:

## I.   INTRODUCTION

On October 25, 2022, Plaintiff Anthony Lockhart ("Plaintiff"), filed a Complaint against his former employer, Advocate, alleging sex and/or gender discrimination under Title VII. (Dkt. No. 1, Complaint ("Compl.")). Advocate moved to dismiss Plaintiff's Complaint because Plaintiff did not plausibly allege that Advocate took any action against him because of his sex. (Dkt. No. 15). The Court granted Advocate's Motion, noting that "nothing in the Complaint allows me to infer that he would not have been fired if he were female, assuming all the other circumstances – including allegations of sexual misconduct by patients – remained the same." (Dkt. No. 22 at p. 3).

On March 31, 2023, Plaintiff filed an Amended Complaint, now alleging both a Title VII claim and defamation claims under Illinois common law. (Plaintiff's Amended Complaint ("Am. Compl.") at Dkt. No. 24). The amended pleading adds new allegations that do not cure the defects with

Page **1** of 14

Plaintiff's Title VII claim. Like his original pleading, Plaintiff continues to allege that Advocate terminated his employment as an ultrasound technician after conducting an allegedly unfair and/or incomplete investigation into a female patient's complaint, which reported that Plaintiff inappropriately touched her while providing a medical exam. Plaintiff again alleges that "Plaintiff's employment was terminated for both discriminatory purposes, as well as pretextual reasons, in an attempt of Defendant company to insulate itself from involvement with any legal claims which might be perceived to be criminal and/or sexual in nature." (Am. Compl. ¶ 53). Plaintiff's Amended Complaint adds the following allegations:

- Advocate allegedly discriminated against Plaintiff's gender by "twice placing him in situations where female patients specifically requested the presence of female gendered hospital staff." (Am. Compl. ¶ 54). Plaintiff further alleges that "the accusations from both November 2020 and November 29, 2021 would not have occurred to similarly situated female gendered employees." (Am. Compl. ¶ 55).
- Advocate allegedly discriminated against Plaintiff by "publishing gender-based defamatory statements, which were false and/or misleading in nature." (Am. Compl. ¶ 58).

As discussed below, the court should dismiss Plaintiff's Amended Complaint, in its entirety and with prejudice.

## II. PLAINTIFF'S AMENDED TITLE VII DISCRIMINATION CLAIM MUST BE DISMISSED WITH PREJUDICE

Plaintiff still has not plausibly alleged that Advocate terminated his employment because of his sex and, therefore, this Court should dismiss Plaintiff's Title VII claim in his Amended Complaint. The same defects that Advocate noted in moving to dismiss Plaintiff's original pleading are still present in the amended pleading and defeat his claim. Plaintiff continues to allege that Advocate terminated his employment for a reason other than his gender and continues to characterize any difference in

treatment as an alleged preference towards victims of sexual misconduct over alleged perpetrators. These allegations, once again, defeat Plaintiff's claim.

To start, Plaintiff continues to allege that the reason that Advocate terminated his employment was to shield itself from liability associated with claims of sexual misconduct. (Am. Compl. ¶ 53). A Title VII claim may be dismissed under Rule 12(b)(6) where the Plaintiff alleges a reason for the challenged employment decision that is something other than the plaintiff's gender. Ludlow v. Northwestern University, 125 F. Supp. 3d 783, 792 (N.D. Ill. 2015) (granting a motion to dismiss a male professor's gender discrimination claim, where the professor alleged that his employer terminated him and favored a female student in its handling of an investigation into a sexual assault claim that the student raised against him because alleged favoritism was attributed to "lawful, independent goals" such as shields to liability and negative publicity); Tania Consulting Services, Inc. v. City of Chi., Case No. 06 C 3562, 2007 WL 1052503, *3 (N.D. Ill. April 5, 2007) (dismissing Title VII discrimination claim under Rule 12(b)(6) because plaintiff's complaint alleges that the reason for the alleged adverse action is something other than national origin and gender, thus precluding her discrimination claims).

Plaintiff also continues to allege that Advocate's investigation into the patient complaint was unfair and/or showed preference to the complaining patient. (Am. Compl. ¶¶ 26-28, 33, 34, 50, 52). However, an alleged difference in treatment between an alleged female victim and male perpetrator cannot support a gender discrimination claim. See e.g., Doe v. Columbia College Chi., 299 F. Supp. 3d 939, 951-952 (N.D. Ill. 2017), aff'd by Seventh Circuit, 933 F.3d 849 (7th Cir. 2019) (plaintiff's own allegations make clear that the alleged unfair treatment was "because of his status as a person accused of sexual assault, not because of his gender" and "just because the underlying conduct was "sexual in nature" did not mean that the plaintiff's treatment implicated gender discrimination); Doe v. Marian Univ., Case No. 19-cv-388, 2019 WL 7370404, *10 (E.D. Wisc. December 31, 2019) (holding that

Plaintiff failed to show gender discrimination because he did not indicate that the university's objective was to go after men, rather than people, accused of sexual misconduct).

The new factual allegations in Plaintiff's Amended Complaint do not fix these defects. *First*, the newly alleged "defamation" claims are meritless and are discussed below in Section III. *Second*, Plaintiff's claim that Advocate required him to work with female patients despite these patients requesting a female provider does not show that Advocate's decision to terminate him following complaints from those same patients was because of Plaintiff's gender. (See Am. Compl. ¶ 54). Plaintiff claims that these patients would not have submitted complaints against female providers who treated them – presumably because these female patients preferred female providers in the first place. (Am. Compl. ¶ 55). However, it is important to note that Plaintiff alleges that the female patients did not merely complain that they were treated by a male employee when they preferred a female employee, but rather complained that Plaintiff inappropriately touched their private areas during the exam. (Am. Compl. at Ex. C).

Moreover, Plaintiff tries to show discrimination by claiming that a patient would have treated a female provider differently, but the appropriate comparator analysis does not question whether a *patient* treated Plaintiff differently than a similarly situated female ultrasound technician. Rather, the relevant question must be whether *Advocate* treated Plaintiff differently than a similarly situated female ultrasound technician. See March 16, 2023 Court Order, Dkt. No. 22 ("[I]f a female employee would also have been fired following such allegations, then there was no sex discrimination."); see also Morris v. Emory Clinic, Inc., 402 F.3d 1076, 1082 (11th Cir. 2005) ("Morris also fails to identify a female physician who received similar complaints concerning forceful physician examinations who was not terminated (or received favorable treatment). Without showing that a comparable female received "nearly identical" complaints, we cannot adequately compare the Clinic's actions towards Morris and other female physicians."). Notably, Plaintiff has not alleged that Advocate engaged in any dissimilar

Page 4 of 14

treatment towards female ultrasound technicians. Plaintiff has not alleged that Advocate excused female technicians from treating patients who requested to be seen by male providers. Plaintiff has not alleged that Advocate was more lenient towards female technicians who were subject to patient complaints of inappropriate touching. Because Plaintiff has not alleged that Advocate treated him unfavorably *because of* his gender or sex, his Title VII claim must fail.

### III. PLAINTIFF'S DEFAMATION CLAIMS (COUNTS II AND III) MUST BE DISMISSED WITH PREJUDICE

Plaintiff's Amended Complaint adds two new counts, now alleging defamation claims that should not survive this Motion to Dismiss. Plaintiff attempts to assert two separate actions for Defamation *Per Se* in connection with the Corrective Action Notice that Advocate issued to Plaintiff on January 14, 2022. (Am. Compl. ¶¶ 29, 71-89; "Exhibit C" to the Am. Compl.). He claims the Corrective Action Notice contains defamatory statements regarding alleged incidents occurring in November 2020 and on November 29, 2021, which portray Plaintiff in a false and/or misleading light. (Am. Compl. ¶ 36). As an initial matter, Illinois follows the single-publication rule, which limits a plaintiff to one cause of action for damages in defamation actions founded upon a single publication or utterance. 740 ILCS 165/1 (West 2016); Ciolino v. Simon, 2020 IL App (1st) 190181, ¶ 45, aff'd, 2021 IL 126024, ¶ 45. Accordingly, Plaintiff's stylistic decision to separate his Defamation action into two counts cannot result in double recovery against Advocate where the claims are based on a single publication. Id. Moreover, as detailed below, Counts II and III of the Amended Complaint must be dismissed *with prejudice* where they are untimely, do not state a legally cognizable claim, the offending statements are subject to an innocent construction, and Plaintiff lacks sufficient facts to pursue punitive damages.

### A. Plaintiff's Defamation *Per Se* Claim Was Not Filed Within One Year of Publication.

Plaintiff's Defamation claims should be dismissed as untimely. In Illinois, the statute of limitations for defamation is one year from the publication of the defamatory statement. 735 ILCS

5/13–201. Generally, a complaint need not anticipate affirmative defenses like limitations periods. "A claim may nevertheless be dismissed on a Rule 12(b)(6) motion if the plaintiff pleads himself out of court by 'alleging (and thus admitting) the ingredients of the defense' in the complaint." Vazquez v. Suncast Corp., No. 18 CV 05002, 2019 WL 2576554, at *7 (N.D. Ill. June 24, 2019) (quoting U.S. Gypsum Co. v. Ind. Gas Co., Inc., 350 F.3d 623, 626 (7th Cir. 2003)) (rejecting equitable tolling argument where intentional infliction of emotional distress claim filed beyond the limitations period in conjunction with an EEOC claim).

Here, Plaintiff's Defamation *Per Se* claims are based on the Corrective Action Notice that Advocate issued to Plaintiff "[o]n or about January 14, 2022[.]" (Am. Compl. ¶¶ 29, 36, 72, 81 ; Exhibit C ). More than one year later, on March 31, 2023, Plaintiff first alleged a cause of action for Defamation based on the offending publication. *Id.* at ¶¶ 71-89. The Seventh Circuit and its District Courts have expressly held that the filing of charge of discrimination with the EEOC does not toll the period of limitation applicable to state law claims, even when the actions are based on the same facts. Juarez v. Ameritech Mobile Commc'ns, Inc., 957 F.2d 317, 322–23 (7th Cir. 1992) (holding, "the time for filing [a state-law claim of invasion of privacy] is not tolled by the filing of a discrimination charge with the EEOC"); Miles v. LaSalle Fin. Servs., Inc., No. 93 C 1660, 1995 WL 599053, at *2-3 (N.D. Ill. Oct. 5, 1995) (barring plaintiff's untimely filed defamation claim, which "is clearly separate from, and independent of, Title VII and therefore, the filing of a discrimination charge does not toll his state law claim"); see also Behn v. Kiewit Infrastructure, Co., 2017 WL 5152346, at *2-3 (N.D. Ill. Nov. 7, 2017) (collecting district court decisions dismissing untimely tort claims under the reasoning set forth in Juarez); Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 466 (1975) (finding the limitations period for Section 1981 claims is not tolled by the filing of a Title VII action with the EEOC because the remedies available under these two actions "are truly independent").

Plaintiff has pled himself out of court by alleging Defamation based on a publication made more than a year prior. As such, Counts II and III of the Amended Complaint should be dismissed *with prejudice*. U.S. Gypsum Co., 350 F.3d at 626. While this Court's analysis should end here, below are alternative legal bases establishing that Plaintiff cannot maintain a Defamation claim against Advocate.

### B. Plaintiff Does Not Plead Facts Supporting the Elements of a Defamation Claim.

Plaintiff has not alleged the elements of a defamation claim under Illinois law, which requires showing that "the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that [the] publication caused damages." Bd. of Forensic Doc. Exam'rs, Inc. v. Am. Bar Ass'n, 922 F.3d 827, 831 (7th Cir. 2019) (quoting Green v. Rogers, 234 Ill. 2d 478, 491 (Ill. 2009)). A statement may be considered defamation *per se* and damages may be presumed where the "defamatory character is obvious and apparent on its face." *Id.* (quoting Tuite v. Corbitt, 224 Ill. 2d 490, 501 (Ill. 2006)). Illinois recognizes five categories of statements that are considered defamatory *per se*, three of which are potentially relevant here – "those imputing the commission of a criminal offense; . . . those imputing an inability to perform or want of integrity in the discharge of duties of office or employment; [and] those that prejudice a party, or impute lack of ability, in his or her trade, profession or business[.]" Van Horne v. Muller, 185 Ill. 2d 299, 307 (Ill. 1998).

#### 1. Plaintiff Does Not Identify a False Statement.

Plaintiff's Amended Complaint fails to allege that Advocate made a false statement. To maintain a defamation action, a plaintiff "is not required to recite the alleged defamatory statements verbatim, but the substance of any statement must be pleaded with 'sufficient precision and particularity so as to permit initial judicial review of its defamatory content.'" Bittman v. Fox, 107 F. Supp. 3d 896, 902 (N.D. Ill. 2015) (quoting Green, 234 Ill.2d at 492). "To require [a plaintiff] to set

forth the alleged defamatory statements with particularity is not holding him to a higher, fact pleading standard, but rather to require he plead the substantive elements of these torts under Illinois law." Ludlow, 79 F. Supp. 3d at 836-37.

Plaintiff has not alleged that *any statement* set forth in the Corrective Action Notice is false. He repeatedly takes issue with how the Notice describes that the complaints were brought by "female" patients. (Am. Compl. ¶¶ 59-60). Yet, Plaintiff does not dispute that Advocate received complaints about him from two female patients, that Advocate conducted an investigation into those allegations, that Plaintiff has no direct knowledge as to the results of those investigations, and that if the complaints were found to be valid, such conduct would violate Advocate's policies. See id. at ¶¶ 24, 40, 42, 50-51. Plaintiff's contempt over his termination does not automatically entitle him to recovery in connection with the notice of said termination. Plaintiff's vague claim that statements in the Corrective Action Notice "portray the events and Plaintiff in a false and/or misleading light," without directing this Court to *any* false statements by Advocate, does not meet the pleading standard required to maintain an action for Defamation *Per Se*. Id. at ¶ 36; Bittman, 107 F. Supp. 3d at 902.

### 2. **Plaintiff Pleads No Facts Establishing Publication to a Third Party.**

The Amended Complaint does not allege that Advocate published the Corrective Action to anyone other than Plaintiff himself. "Publication is an essential element of a claim for defamation," and requires "a communication of the allegedly defamatory statement to someone other than plaintiff." Layne v. Builders Plumbing Supply Co., 210 Ill. App. 3d 966, 975 (2nd Dist. 1991). Plaintiffs have repeatedly sought to circumvent the third-party publication requirement through arguing they would be compelled to disclose to future employers their reason for termination. However, "[n]either the Illinois courts nor the Seventh Circuit have recognized the tort of self-defamation, or defamation based on compelled self-publication." Swanson v. Baker & McKenzie, LLP, No. 12 C 8290, 2013 WL 1087579, at *8 (N.D. Ill. Mar. 14, 2013), aff'd, 527 F. App'x 572 (7th Cir. 2013).

In Emery v. Northeast Ill. Reg'l Commuter R.R. Corp., an attorney-plaintiff brought a compelled self-defamation claim, arguing she had ethical obligations before the ARDC to disclose her basis for discharge from Metra, even though her former employer's accusations were not truthful. 377 Ill. App. 3d 1013, 1021 (1st Dist. 2007). The Appellate Court upheld dismissal of the action and detailed why a majority of jurisdictions, including Illinois and the Seventh Circuit, have rejected the doctrine of self-defamation. Id. at 1030. The Court explained that recognition of such a tort:

1) would encourage employers to curtail communications with employees, and the employees' prospective employers, for fear of liability;
2) would discourage plaintiffs from mitigating damages by providing them with too much control over the cause of action, including but not limited to manipulating the applicable statute of limitations;
3) conflicts with the employment-at-will doctrine; and
4) impermissibly broadens the scope of defamation liability.

Id. at 1026-29.

Here, Plaintiff claims Advocate issued the alleged defamatory statements in the Corrective Action Notice *to Plaintiff*. (Am. Compl. ¶ 29). He does not allege Advocate ever published the offending statement to a third party, as is required for a viable cause of action. Layne, 210 Ill. App. 3d at 975. Plaintiff improperly attempts to bring a compelled self-defamation claim, asserting the Corrective Action Notice, "*upon information and belief*, deterred the community including potential new employers from associating with Plaintiff," and, "is incredibly prejudicial to Plaintiff and his ability to find new or future employment in the same field or trade." (Am. Compl. ¶¶ 75-76, 84 & 86) (emphasis added). Like the action in Emery, Plaintiff's Defamation *Per Se* claims should be dismissed *with prejudice* where he fails to plead the elements of a tort recognized under Illinois law. See Emery, 377 Ill. App. 3d at 1030; Layne, 210 Ill. App. 3d at 975-76 (upholding dismissal and finding, "the doctrine of compelled self-defamation unduly burdens the free communication of views and unreasonably broadens the scope of defamation liability"); see also Rice v. Nova Biomedical Corp., 38 F.3d 909, 912 (7th Cir. 1994) (following Layne's reasoning and adding that recognition of the tort would "make

[ ] it impossible for an employer to communicate his grounds for discharging an employee to the employee even confidentially without incurring a grave risk of being sued for defamation").

### C. The Offending Publication is Subject to an Innocent Construction.

"A statement that is defamatory *per se* will not be actionable 'if it is reasonably capable of an innocent construction.'" Huon v. Denton, 841 F.3d 733, 738 (7th Cir. 2016) (quoting Green, 234 Ill.2d at 498). "Under this rule, a court must give the defendant's words their natural and obvious meaning, after having considered 'both the substance of defendant's alleged statements and the context in which they allegedly were made.'" Id. (quoting Green, 234 Ill.2d at 500). "[I]f a statement is capable of two reasonable constructions, one defamatory and one innocent, the innocent one will prevail." Id. (quoting Muzikowski v. Paramount Pictures Corp., 322 F.3d 918, 925 (7th Cir. 2003)).[1] Whether a statement is reasonably capable of an innocent construction is a question of law for the court to decide in the first instance. Lott v. Levitt, 556 F.3d 564, 569 (7th Cir. 2009).

Plaintiff's Defamation *Per Se* claims are based on Advocate's Corrective Action Notice, which states in pertinent part:

> Your employment with Advocate Aurora Health (AAH) is being terminated for **alleged conduct** that **would violate** the AAH Patient Rights & Responsibilities Policy.
>
> In or about November 2020, **an investigation occurred based on a complaint** from a female patient that you inappropriately touched her vagina during an ultrasound for Vascular Extremity Lower Duplex Arterial. . . . In or about December 2021, **an investigation occurred based on a complaint** from a different female patient that you inappropriately touched her crotch during a venous duplex ultrasound on or about November 29, 2021. . . .

---

[1] See e.g., Green, 234 Ill. 2d at 499 (affirming trial court's dismissal of defamation claim where allegations that plaintiff "exhibited a long pattern of misconduct with children" and "abused players, coaches and umpires" was found capable of an innocent construction); Harte v. Chicago Council of Lawyers, 220 Ill. App. 3d 255, 261-62 (1st Dist. 1991) (a published statement referencing that an attorney was "implicated" in Operation Greylord could reasonably be interpreted to mean the attorney was only involved in the proceedings and not incriminated by them); McGurren v. Hubbard Radio Chicago, LLC, No. 21 C 6287, 2022 WL 602467, at *3 (N.D. Ill. Mar. 1, 2022), appeal dismissed, No. 22-2350, 2022 WL 18493433 (7th Cir. Aug. 16, 2022) (finding an employer's internal email discussing the investigation into plaintiff's EEOC claim and that the employer does not agree with plaintiff's interpretation was subject to an innocent construction).

> As the **alleged conduct would violate** the AAH Patient Rights & Responsibilities Policy, your employment with Advocate Aurora Health is being terminated, effective your last day worked.

(Am. Compl. ¶¶ 51, 74, 81, 85 and Exhibit C (emphasis added)). The Amended Complaint acknowledges, "the subject Correct [sic] Action Notice does not indicate that Plaintiff was found to have *actually* violated the PRR Policy, but merely contends that the '*alleged*' conduct '*would violate*' the PRR Policy." (Am. Compl. ¶ 51). Plaintiff refers to this as a "vaguely suggestive statement," which "imputes a lack of integrity toward Plaintiff, and is suggestive of the commission of one or more crime[s][.]" (Id. at ¶¶ 85-86).

Importantly, this Court is not required to adopt Plaintiff's interpretation of the offending statements and should conduct its own review of the at-issue publication. Lott, 556 F.3d at 569. The Corrective Action Notice repeatedly refers to the "*alleged* conduct" without ever commenting on the veracity of such claims or accusing Plaintiff of taking *any* action. (Am. Compl. at Exhibit C). A reasonable reader would conclude that Advocate, having received two similar complaints against Plaintiff within one year that, *if true*, would violate its policies, decided to terminate its at-will employee. Even if Advocate's offending statements (which Plaintiff fails to identify) fall within a *per se* category (which Advocate does not admit), the Corrective Action Notice is subject to an innocent construction. Accordingly, there can be no claim for Defamation *Per Se*, and Counts II and III must be dismissed *with prejudice*. See Huon, 841 F.3d at 738; Lott, 556 F.3d at 568.

### D. Plaintiff Has Not Pled Facts Supporting a Punitive Damages Claim.

The Court should dismiss Plaintiff's request for punitive damages. "Punitive damages serve to punish the offender and to deter that party and others from engaging in similar acts of wrongdoing in the future." Parker v. Four Seasons Hotels, Ltd., 845 F.3d 807, 813 (7th Cir. 2017). "Under Illinois law, 'punitive or exemplary damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross

negligence as to indicate a wanton disregard of the rights of others.'" Id. at 812 (quoting Kelsay v. Motorola, Inc., 74 Ill.2d 172, 185 (Ill. 1978)). "Because of their penal nature, punitive damages are not favored in the law, and the courts must take caution to see that punitive damages are not improperly or unwisely awarded." Kelsay, 74 Ill.2d at 188. "[T]he preliminary question of whether the facts of a particular case justify the imposition of punitive damages is properly one of law." Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd., 277 F.3d 936, 946 (7th Cir. 2002) (quoting Kelsay, 74 Ill.2d at 186).

Plaintiff prays for punitive damages on his Defamation *Per Se* claims. (Am. Compl. ¶¶ 79, 89). However, his boilerplate allegations regarding "the malicious nature [ ] of the communications" and "egregious conduct of Defendant company" lack supporting facts and are insufficient, even under federal pleading standards. Id. Nowhere in the Amended Complaint does Plaintiff claim that *any* statement in the Corrective Action Notice is false or that Advocate published the offending Notice *to anyone* but Plaintiff. See supra at § II.B.1 & 2. Plaintiff has not pled any facts supporting a claim that Advocate committed fraud, actual malice, deliberate violence or oppression, or acted with such willfulness or gross negligence as to indicate a wanton disregard of Plaintiff's rights. Parker, 845 F.3d at 812.

Plaintiff's Defamation *Per Se* claims should be dismissed for the various reasons detailed above. However, if Counts II and III do survive, the prayer for punitive damages should be stricken. Nothing in the pleading would support such an award nor are there any facts tending to indicate that discovery may reveal a basis for punitive damages. The alleged defamatory publication is what it is. If Plaintiff later uncovers evidence of malice in connection with the publication, he may properly present such arguments and move for leave to amend his pleading accordingly. Allowing Plaintiff to maintain the threat of exemplary damages absent any facts supporting such an award is unduly prejudicial and

serves as a detriment to the parties' ability to negotiate an equitable resolution in this matter. Accordingly, Advocate requests that Plaintiff's punitive damages relief be stricken.

## CONCLUSION

WHEREFORE, Advocate respectfully requests that this Court dismiss Plaintiff's Amended Complaint in its entirety and with prejudice, and for any other relief deemed just and appropriate because Plaintiff has failed to plead any legitimate action against them.

Dated: April 14, 2023

Respectfully Submitted,

Advocate Health and Hospitals Corp. d/b/a Advocate Aurora Health

By: /s/ Heather A. Bailey
Heather A. Bailey, Esq. (ARDC#06274501)
Allison P. Sues, Esq. (ARDC#6304098)
Amundsen Davis, LLC
150 N. Michigan Ave., Suite 3300
Chicago, Illinois 60601
(312) 894-3266 – Telephone
(312) 997-1710 – Facsimile

**Attorneys For Defendant, Advocate Health and Hospitals Corp. d/b/a Advocate Aurora Health**

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants.

/s/ Heather A. Bailey

Attorney for Advocate Health and Hospitals Corp. d/b/a Advocate Aurora Health